Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM GLOBOKAR,<br><br>                         Plaintiff,<br><br>vs.<br><br>HESS CORPORATION, JAMES H. QUIGLEY, TERRENCE J. CHECKI, LEONARD S. COLEMAN, JR., LISA GLATCH, JOHN B. HESS, EDITH E. HOLIDAY, MARC S. LIPSCHULTZ, RAYMOND J. MCGUIRE, DAVID MCMANUS, KEVIN O. MEYERS, KARYN F. OVELMEN, and WILLIAM G. SCHRADER.<br><br>                         Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)   Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)   Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, William Globokar ("Plaintiff"), by and through his attorneys, alleges upon

information and belief, except for those allegations that pertain to him, which are alleged upon

personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Hess Corporation ("Hess" or the

"Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,",

collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Chevron Corporation ("Parent") through merger vehicle Yankee Merger Sub, Inc. ("Merger Sub," and together with Parent, "Chevron") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an October 23, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Hess stockholders will receive 1.0250 shares of Chevron stock for each share of Hess stock held, equating to $171.00 per share based on Chevron's closing price on October 20, 2023 (the "Merger Consideration").

3.     Thereafter, on February 26, 2024, in support of the Proposed Transaction, the Company and Chevron caused to be filed with the SEC a Form S-4 attaching the Registration Statement (the "Registration Statement").

4.     The Proposed Transaction is unfair for a number of reasons.  Notably, the Proposed Transaction does not appear to provide for a collar mechanism to keep the merger consideration value within the realm of reasonableness. For example, Chevron stock was trading at $166.83 just prior to the announcement of the merger.  Since then, Chevron has traded as low as $141.70and has not traded above $156.00 per share since the October announcement of the merger.

5.     The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning,

among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Hess , provided by Hess management to the Board and the Board's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"); and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinion created by Goldman Sachs and provided to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a Hess stockholder.

8.      Defendant Hess is an exploration and production company, explores, develops, produces, purchases, transports, and sells crude oil, natural gas liquids (NGLs), and natural gas. Hess is incorporated under the laws of the State of Delaware and has its principal place of business at 1185 Avenue of the Americas, 40th Floor, New York, NY 10036.  Shares of Hess Common Stock are traded on the New York Stock Exchange under the symbol "HES."

9.      Defendant James H. Quigley ("Quigley") has been the Chairman of the Board of Director of the Company at all relevant times.

10.      Defendant Terrence J. Checki ("Checki") has been a director of the Company at all relevant times.

11.      Defendant Leonard S. Coleman, Jr. ("Coleman") has been a director of the Company at all relevant times.

12.      Defendant Lisa Glatch ("Glatch") has been a director of the Company at all relevant times.

13.    Defendant John B. Hess ("J. Hess") has been a director of the Company at all relevant times.  J. Hess is also the Chief Executive Officer of the Company.

14.    Defendant Edith E. Holiday ("Holiday") has been a director of the Company at all relevant times.

15.    Defendant Marc S. Lipschultz ("Lipschultz") has been a director of the Company at all relevant times.

16.    Defendant Raymond J. McGuire ("McGuire") has been a director of the Company at all relevant times.

17.    Defendant David McManus ("McManus") has been a director of the Company at all relevant times.

18.    Defendant Kevin O. Meyers ("Meyers") has been a director of the Company at all relevant times.

19.    Defendant Karyn F. Ovelmen ("Ovelmen") has been a director of the Company at all relevant times.

20.    Defendant William G. Schrader ("Schrader") has been a director of the Company at all relevant times.

21.    Defendants identified in ¶¶ 9 - 20 are collectively referred to as the "Individual Defendants."

22.    Non-Party Chevron Corporation, through its subsidiaries, engages in the integrated energy and chemicals operations in the United States and internationally.

23.    Non-Party Merger Sub is a wholly owned subsidiary of Chevron Corporation created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its principal offices in this District and the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

27.     Hess is an exploration and production company, explores, develops, produces, purchases, transports, and sells crude oil, natural gas liquids (NGLs), and natural gas. The company operates in two segments, Exploration and Production, and Midstream. It conducts production operations primarily in the United States, Guyana, the Malaysia/Thailand Joint Development Area, and Malaysia; and exploration activities principally offshore Guyana, the U.S. Gulf of Mexico, and offshore Suriname and Canada. The company is also involved in gathering, compressing, and

processing natural gas; fractionating NGLs; gathering, terminaling, loading, and transporting crude oil and NGL through rail car; and storing and terminaling propane, as well as providing water handling services primarily in the Bakken Shale plays in the Williston Basin area of North Dakota.

28.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial growth.  For example, in the July 26, 2023, press release announcing its 2023 Q2 financial results, the Company highlighted such milestones as total oil and gas net production was 387,000 barrels of oil equivalent per day (boepd), up 28% from 303,000 boepd, proforma for asset sold, in second quarter of 2022. Further, Bakken net production was 181,000 boepd, up 29% from 140,000 boepd in the second quarter of 2022; Guyana net production was 110,000 bopd, compared with 67,000 bopd in the prior-year quarter.

29.     Speaking on these positive results, CEO Defendant J. Hess commented on the Company's positive financial results as follows, "We continue to successfully execute our strategy to deliver industry leading cash flow growth and financial returns to our shareholders while safely and responsibly producing oil and gas to help meet the world's growing energy needs."

30.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Hess.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory, the Individual Defendants have caused Hess to enter into the Proposed Transaction without providing requisite information to Hess stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate the sale of the Company.

33.     Notably, the Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness. For example, Chevron stock was trading at $166.83 just prior to the announcement of the merger.  Since then, Chevron has traded as low as $141.70and has not traded above $156.00 per share since the October announcement of the merger.

34.     The Registration Statement fails to disclose adequate information regarding Company's decision to retain two financial analysts in regard to the Proposed Transaction. Moreover, The Registration Statements fails to disclose what services J.P. Morgan Securities LLC ("JP Morgan") was retained to perform, any information regarding the fees to be paid to JP Morgan for services rendered, and any information regarding services rendered by JP Morgan for Hess and Chevron in the two-year period immediately preceding the Proposed Transaction.

35.     The Registration Statement fails to disclose adequate information regarding Company's failure to seek any potential strategic alternatives purely because the Company was afraid it would affect its ability to transact with Chevron on "attractive terms," but fail to address how such risk outweighs the fact that such potential outreach could result in superior opportunities to add value for the Company's public stockholders, such as Plaintiff.

36.     Finally, the Registration Statement fails to provide adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of

the underlying transaction, including specifically all discussions relating to Chevron's desire to have Defendant J. Hess become a member of its Board of Directors after the close of the Merger.

37.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

38.     On October 23, 2023, Hess and Chevron issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> SAN RAMON, CALIF. & NEW YORK--(BUSINESS WIRE)-- Chevron Corporation (NYSE: CVX) announced today that it has entered into a definitive agreement with Hess Corporation (NYSE: HES) to acquire all of the outstanding shares of Hess in an all-stock transaction valued at $53 billion, or $171 per share based on Chevron's closing price on October 20, 2023. Under the terms of the agreement, Hess shareholders will receive 1.0250 shares of Chevron for each Hess share. The total enterprise value, including debt, of the transaction is $60 billion.
>
> The acquisition of Hess upgrades and diversifies Chevron's already advantaged portfolio. The Stabroek block in Guyana is an extraordinary asset with industry leading cash margins and low carbon intensity that is expected to deliver production growth into the next decade. Hess' Bakken assets add another leading U.S. shale position to Chevron's DJ and Permian basin operations and further strengthen domestic energy security. The combined company is expected to grow production and free cash flow faster and for longer than Chevron's current five-year guidance. In addition, John Hess is expected to join Chevron's Board of Directors.
>
> "This combination positions Chevron to strengthen our long-term performance and further enhance our advantaged portfolio by adding world-class assets," said Chevron Chairman and CEO Mike Wirth. "Importantly, our two companies have similar values and cultures, with a focus on operating safely and with integrity, attracting and developing the best people, making positive contributions to our communities and delivering higher returns and lower carbon."
>
> "Building on our track record of successful transactions, the addition of Hess is expected to extend further Chevron's free cash flow growth," said Pierre Breber, Chevron's CFO. "With greater confidence in projected long-term cash generation, Chevron intends to return more cash to shareholders with higher dividend per share growth and higher share repurchases."
>
> "This strategic combination brings together two strong companies to create a premier integrated energy company," CEO John Hess said. "I am proud of our

people and what we have achieved as a company, which has one of the industry's best growth portfolios including Guyana, the world's largest oil discovery in the last 10 years, and the Bakken shale, where we are a leading oil and gas producer. Chevron has a world-class diversified portfolio of assets and one of the industry's strongest balance sheets and cash return profiles. I believe our strategic combination creates a company that is stronger in every respect, with the leadership, asset portfolio and financial resources to lead us through the energy transition and deliver significant shareholder value for years to come."

**Transaction Benefits**

- **Strong strategic fit:**
  - o  Guyana – 30% ownership in more than 11 billion barrels of oil equivalent discovered recoverable resource with high cash margins per barrel, strong production growth outlook and potential exploration upside.
  - o  Bakken – 465,000 net acres of high-quality, long-duration inventory supported by the integrated assets of Hess Midstream.
  - o  Complementary Gulf of Mexico assets and steady free cash flow from Southeast Asia natural gas business.

- **Accretive to cash flow per share and extends growth into 2030s:**
  - o  Expected to be accretive to cash flow per share in 2025 after achieving synergies and start-up of the fourth floating production storage and offloading (FPSO) vessel in Guyana.
  - o  Increases Chevron's estimated five-year production and free cash flow growth rates and expected to extend such growth into the next decade.

- **Increases cash returned to shareholders:**
  - o  In January, Chevron expects to recommend an increase to its first quarter dividend per share of 8% to $1.63, which will be subject to the approval of the Chevron Board of Directors.
  - o  Post closing, Chevron intends to increase share repurchases by $2.5 billion to the top end of its guidance range of $20 billion per year in a continued upside oil price scenario.

- **Capital and cost efficient:**
  - o  The combined company's capital expenditures budget is expected to be between $19 and $22 billion.
  - o  With a stronger portfolio after closing, Chevron expects to increase asset sales and generate $10 to $15 billion in before-tax proceeds through 2028.
  - o  The transaction is expected to achieve run-rate cost synergies around $1 billion before tax within a year of closing.

**Transaction Details**

The acquisition consideration is structured with 100 percent stock utilizing Chevron's equity. In aggregate, upon closing of the transaction, Chevron will issue approximately 317 million shares of common stock. Total enterprise value of $60 billion includes net debt and book value of non-controlling interest.

The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the first half of 2024. The acquisition is subject to Hess shareholder approval. It is also subject to regulatory approvals and other customary closing conditions.

The transaction price represents a premium of 10.3% on a 20-day average based on closing stock prices on October 20, 2023."

***Potential Conflicts of Interest***

39.     The breakdown of the benefits of the deal indicates that Hess insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Hess.

40.     For example, Company insiders, currently own large illiquid blocks of Company stock all of which will be converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Hess Common Stock Beneficially Owned | | |
| --- | --- | --- | --- |
| | Total Number of Shares[1] | Percent of Class | Of Total Number of Shares, Number of Option Shares |
| Checki, Terrence J. | 29,231 | * | |
| Coleman, Leonard S. | 17,331 | * | |
| Glatch, Lisa | 2,288 | * | |
| Goodell, Timothy B. | 174,610 | * | 30,916 |

| Name | Total Number of Shares | Percent of Class | Of Total Number of Shares, Number of Option Shares |
|---|---|---|---|
| Hess, John B. | 28,913,483[2] | 9.39% | 774,343 |
| Hill, Gregory P. | 221,124 | * | 122,837 |
| Holiday, Edith E. | 62,274 | * | |
| Lipschultz, Marc S. | 19,327 | * | |
| Lowery-Yilmaz, Barbara | 137,975 | * | 19,006 |
| McGuire, Raymond J. | 3,143 | * | |
| McManus, David | 38,673 | * | |
| Meyers, Kevin O. | 35,804 | * | |
| Ovelmen, Karyn F. | 6,232 | * | |
| Quigley, James H. | 18,616 | * | |

| | Hess Common Stock Beneficially Owned | | |
|---|---|---|---|
| Name | Total Number of Shares[1] | Percent of Class | Of Total Number of Shares, Number of Option Shares |
| Rielly, John P. | 375,366 | * | 54,649 |
| Schrader, William G. | 31,181 | * | |
| All directors and executive officers as a group (19 persons) | 30,562,793 | 9.91% | 1,048,593 |

41.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| Named Executive Officer | Hess Options ($) | Hess RS Awards ($) | Hess PSU Awards ($) | Total ($) |
|---|---|---|---|---|
| John B. Hess | 6,817,187 | 0 | 28,393,074 | 35,210,262 |

| | | | |
|---|---|---|---|
| Gregory P. Hill | 2,079,910 | 3,469,395 | 17,410,839 | 22,960,144 |
| Timothy B. Goodell | 852,206 | 1,414,903 | 7,098,272 | 9,365,380 |
| John P. Rielly | 884,809 | 1,472,420 | 7,392,884 | 9,750,113 |
| Barbara Lowery-Yilmaz | 628,822 | 1,059,396 | 5,330,563 | 7,018,780 |

42.    Moreover, certain employment agreements with certain Hess executives entitle such executives to certain Merger-Related Compensation and severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Merger-Related Compensation**

| Named Executive Officer | Cash ($)(1) | Equity($)(2) | Pension ($)(3) | Perquisite/ Benefits($)(4) | Tax Reimbursement ($)(5) | Total ($) |
|---|---|---|---|---|---|---|
| John B. Hess | 16,021,810 | 35,210,262 | 4,700,000 | 98,955 | 0 | 56,031,027 |
| Gregory P. Hill | 7,156,105 | 22,960,144 | 2,940,000 | 91,090 | 0 | 33,147,339 |
| Timothy B.  Goodell | 4,385,897 | 9,365,380 | 1,600,000 | 94,061 | 0 | 15,445,338 |
| John P. Rielly | 4,572,590 | 9,750,113 | 3,730,000 | 75,970 | 0 | 18,128,673 |
| Barbara Lowery-Yilmaz | 3,232,869 | 7,018,780 | 1,080,000 | 75,970 | 0 | 11,407,619 |

| Named Executive Officer | Severance ($) | Prorated Bonus ($) | Total ($) |
|---|---|---|---|
| John B. Hess | 15,671,400 | 350,410 | 16,021,810 |
| Gregory P. Hill | 6,933,400 | 222,705 | 7,156,105 |
| Timothy B. Goodell | 4,265,200 | 120,697 | 4,385,897 |
| John P. Rielly | 4,448,000 | 124,590 | 4,572,590 |
| Barbara Lowery-Yilmaz | 3,155,000 | 77,869 | 3,232,869 |

43.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

44.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45.     Thus, while the Proposed Transaction is not in the best interests of Hess, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

46.     The Hess Board and Chevron caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

47.     The Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

a.     Why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness. For example, Chevron stock was trading at $166.83 just prior to the announcement of the merger.  Since then, Chevron has traded as low as $141.70 and has not traded above $156.00 per share since the October announcement of the merger;

b.     Adequate information regarding Company's decision to retain two financial analysts in regard to the Proposed Transaction; and

c.     Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction, including specifically all discussions relating to Chevron's desire to have Defendant J. Hess become a member of its Board of Directors after the close of the Merger.

*Omissions and/or Material Misrepresentations Concerning Hess and Chevron Financial Projections*

48.   The Registration Statement also fails to provide material information concerning financial projections for Hess provided by Hess management to the Board and Goldman Sachs and relied upon by Goldman Sachs in their analyses.

49.   Notably, the Registration Statement reveals that, as part of its analyses, Goldman Sachs reviewed, among other things: "Certain internal financial analyses and forecasts for Hess prepared by its management."

50.   The Registration Statement should have, but fails to provide, certain information in the projections that Hess management provided to the Board and Goldman Sachs.  Courts have

uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

51.    With regard to *Certain Assumptions (Commodity Prices)*, prepared by Hess, the Registration Statements fails to disclose material line items, including the following:

       a.    The specific Commodity Pricing forecaster relied upon in calculating the projections;

       b.    Brent ($/Bbl) and the underlying inputs, metrics, and assumptions used to calculate same;

       c.    WTI oil ($/Bbl) and the underlying inputs, metrics, and assumptions used to calculate same; and

       d.    Henry Hub gas ($/Mcf) and the underlying inputs, metrics, and assumptions used to calculate same.

52.    With regard to *Prospective Financial and Operating Information,* prepared by Hess, the Registration Statement fails to disclose material line items, including the following:

       a.    Consolidated Cash Flow from Operating Activities and the underlying inputs, metrics, and assumptions used to calculate same;

       b.    The underlying inputs, metrics, and assumptions used to determine E&P Adjusted EBITDAX; and

       c.    E&P Capital Expenditures and the underlying inputs, metrics, and assumptions used to calculate same.

53.     The Registration Statement fails to disclose Financial Projections for Chevron prepared by Hess in regard to the Proposed Transaction. These disclosures are imperative for Stockholders, such as Plaintiff, to gain an understanding of how Chevron is functioning financially in order to make an informed decision on how he will vote his shares with respect to the Proposed Transaction.

54.     The Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

55.     The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

56.     The Registration Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

57.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

58.     Without complete and accurate projection data for Hess or Chevron being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of Goldman Sach's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

59.     In the Registration Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

60.     With respect to the *Implied Premia Analysis*, the Registration Statement fails to disclose the assumptions and reasoning behind selecting the specific publicly available data utilized in its implied premia calculations.

61.     With respect to the *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

  a.   The inputs, metrics, and assumptions used to determine the discount rates ranging from 8.5% to 10.5% utilized;

  b.   Hess's weighted average cost of capital utilized;

  c.   The inputs, metrics, and assumptions used to determine the EBITDAX multiples range of 6.0x to 7.0x utilized;

  d.   The inputs, metrics, and assumptions used to determine the implied perpetuity growth rate range of 2.4% to 5.1% utilized; and

  e.   The number of fully diluted shares of Company Common Stock utilized.

62.     With respect to the *Illustrative Present Value of Future Share Price Analysis,* the Registration Statement fails to disclose:

  a.   The inputs, metrics, and assumptions used to determine the P/NTM CF range

of 6.5x to 8.0x utilized;

    b.   The projected year-end number of fully diluted outstanding shares of Company Common Stock for the calendar years of 2025 and 2026 utilized; and

    c.   The inputs, metrics, and assumptions used to determine the illustrative discount rate of 10.1% utilized.

63.    With respect to the *Selected Precedent Transactions Premia Analysis*, the Registration Statement fails to disclose:

    a.   The specific date on which each selected transaction closed;

    b.   The acquisition premia paid for each of the selected transactions analyzed;

    c.   The inputs, metrics, and assumptions used to determine the Premium to Undisturbed 20-day VWAP for each of the selected transactions; and

    d.   The inputs, metrics, and assumptions used to determine the reference range of illustrative premia of (4.3)% to 17.5% applied to the 20-day VWAP of Company Common Stock on October 20, 2023.

64.    With respect to the *Selected Publicly Traded Companies Trading Multiples Analysis*, the Registration Statement fails to disclose:

    a.   The specific metrics observed for each selected publicly traded company;

    b.   The inputs, metrics, and assumptions used to determine the L3Y, CY21, CY22, YTD, and L3M EV/NTM EBITDA multiples for Company;

    c.   The inputs, metrics, and assumptions used to determine the L3Y, CY21, CY22, YTD, and L3M EV/NTM EBITDA multiples for Super Majors Median; and

    d.   The inputs, metrics, and assumptions used to determine the L3Y, CY21, CY22, YTD, and L3M EV/NTM EBITDA multiples for Large Cap E&P Companies

Median.

65.     The Registration Statement states that Goldman Sachs provided Hess Management with preliminary financial analyses for both Chevron and Hess; however, the Registration Statement fails to disclose Goldman Sach's financial analyses relating to Chevron.

66.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

67.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Hess stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

70.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

71.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

72.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

73.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

74.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

75.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

76.     Plaintiff repeats all previous allegations as if set forth in full herein.

77.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

78.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

79.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Hess' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to

them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

80. The Individual Defendants acted as controlling persons of Hess within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Hess to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Hess and all of its employees. As alleged above, Hess is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 6, 2024                    **BRODSKY & SMITH**

                                 By: *Evan J. Smith*
                                     Evan J. Smith
                                     240 Mineola Boulevard
                                     Mineola, NY  11501
                                     Phone:  (516) 741-4977
                                     Facsimile (561) 741-0626

                                     *Attorneys for Plaintiff*